```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
Metropolitan Security Services, Inc., d/b/a Walden  :
Security,                                           :
                                                    :
                       Plaintiff,                   :
                                                    :
             against                                :
                                                    :
Professional Association of Court Security          :
Officers-Southern District of Texas,                :
                                                    :
                       Defendant.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

## COMPLAINT TO VACATE ARBITRATION AWARD

Plaintiff Metropolitan Security Services, Inc., d/b/a Walden Security ("Walden" or the "Company"), brings this action under Section 301 of the Labor-Management Relations Act to vacate an arbitration award ("Award") issued on April 4, 2022, by arbitrator Michael N. Brock ("Arbitrator Brock" or the "Arbitrator"), to declare the Award null and void, and to enjoin the Defendant, Professional Association of Court Security Officers-Southern District of Texas ("PACSO" or the "Union"), from seeking enforcement of the Award (a copy of the Award is annexed hereto as Exhibit A). In support, Plaintiff alleges as follows:

### I.   INTRODUCTION

This is a case where a labor arbitrator blatantly disregarded the clear and unambiguous terms of, and thereby rewrote, a collective bargaining agreement. Walden's contract with the United States Marshals Service ("USMS") allowed the USMS to order the removal of Walden employees from working under the contract. Here, the USMS directed the temporary removal of a Walden employee, and did not authorize his return to work until several weeks after the

employee's disciplinary suspension had been completed.  Even though, undisputedly, it was the USMS, and not Walden, that kept him out of work, the employee and his Union insisted that *Walden* owed him backpay for the post-suspension period that he was out of work.  Nothing in the collective bargaining agreement obligated Walden to compensate employees for lost wages resulting from government-directed removals.  Indeed, the agreement expressly *barred* grievances over such government-directed removals, because, quite obviously, Walden would not and did not agree to be responsible for the actions of its government client.  Yet the Arbitrator disregarded the plain terms of the agreement and dispensed his own brand of industrial justice, holding that Walden was required to compensate the employee for the period he was barred from work by the USMS.  In so doing, the Arbitrator effectively wrote into the agreement an obligation that was never bargained by the parties, exceeding his authority under the law and in violation of the agreement itself.  Such an award cannot stand under well-established legal standards governing judicial review of labor arbitration awards.

## II.     PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Metropolitan Security Services, Inc., d/b/a Walden Security is a Tennessee corporation, with principal office in Chattanooga, Tennessee, engaged in providing security and other related services.

2. Defendant Professional Association of Court Security Officers-Southern District of Texas is a labor organization and the exclusive collective bargaining representative for Plaintiff's employees working as Court Security Officers at United States Courthouses in this District.  The Union's duly authorized officers and agents engage in representing or acting for employee members in this District as to employee members who work in this District.  The

Union's Houston-based Steward submitted the grievance giving rise to the arbitration at issue in this action.

3. The Arbitrator who conducted the arbitration hearing has his office in Houston, Texas, and issued the Award from Houston, Texas.

4. This Court has jurisdiction over the matters set forth in this Complaint based on Section 301 of the Labor-Management Relations Act of 1947, as amended (29 U.S.C. § 185), Sections 9 and 10 of the Federal Arbitration Act, as amended (9 U.S.C. §§ 9, 10), 28 U.S.C. § 1331, and the Declaratory Judgment Act, 28 U.S.C. §2201.

5. Venue is proper in this District under Section 301(c) of the LMRA, 29 U.S.C. § 185(c).

6. At all times relevant herein, Walden Security and the Union were party to a collective bargaining agreement ("CBA"), for the period October 1, 2019 to September 30, 2022. A copy of the CBA is annexed hereto as Exhibit B.

### III.    FACTS

**Background and Relevant Contract Provisions**

7. To assist with the protection of the federal judiciary, including judicial officers, court employees, and judicial facilities, the USMS contracts with private security companies to provide security officers who are referred to as Court Security Officers or CSOs. CSOs receive special limited deputations as armed special deputy marshals and play a vital role in federal courthouse security. While the USMS is ultimately responsible for security inside the courtroom whenever a judge is present, CSOs are primarily responsible for protecting the physical safety and security of the courthouses for which their employer has been contracted to provide such services.

8. Walden is party to a contract with the USMS to provide court security officer services at federal court facilities in the 5th Circuit (the "USMS contract").

9. The USMS contract contains a set of standards, called "Performance Standards," which is essentially a code of conduct governing the CSOs employed by Walden.

10. The USMS contract also contains multiple recitations of the USMS's unilateral right to determine whether a CSO may or may not perform work under the contract.

11. These rights and obligations are set forth in Section C.14 of the USMS contract, entitled "Compliance with CSO Performance Standards:

**C.14.1 Responsibility**

The Contractor shall ensure all employees maintain satisfactory standards of competency, conduct, appearance, and integrity. The Contractor shall enforce appropriate disciplinary actions when necessary up to and including removal at its own discretion or by the direction of the Government. The Contractor shall ensure that all CSOs receive and certify on a CSO-006 *Certification of Court Security Officer Performance Standards* that they have received the CSO performance standards outlined below prior to assuming duties. The Contractor shall maintain these forms and submit to the Government upon request. If any of the standards are violated, the Contractor shall report any/all performance standard violations to the COR immediately in accordance with Section H.10 *Procedures for Addressing Court Security Office (CSO) Misconduct or Failure to Perform*. **Additionally, the Government reserves the right at all times to determine the suitability of any Contractor employee to serve as a CSO (see Section H.9** *Removal of CSOs and Other Contractor Personnel for Violations of the CSO Performance Standards***).** Should a CSO be removed from the contract, the Contractor shall follow the requirements of Section C.7 *Turnover*.  (Emphasis added.)

12. Section H.9 of the USMS contract, referenced above, expressly provides that the USMS may remove CSOs from performing services on the contract on either a temporary or permanent basis:

**H.9    REMOVAL OF CSOs AND OTHER CONTRACTOR PERSONNEL FOR VIOLATIONS OF THE CSO PERFORMANCE STANDARDS**

(a) The Contractor shall be responsible for providing employees that meet the qualifications and requirements established under the contract. **Any employee provided by the Contractor, to include the District Supervisor (DS) and**

> **Contract Manager (CM), that fails to meet the CSO performance standards set forth in Section C may be removed from performing services for the Government under this contract upon written request of the Contracting Officer.**
>
> (b) **The United States Marshals Service reserves the right at all times to determine the suitability of any Contractor employee to serve as a CSO, DS, or CM.** Decisions rendered under any dispute resolution process, including assisted settlement, negotiation, consultation, mediation, mini trials, arbitration or any other process available to the contractor and its employees **shall not be binding upon the United States Marshals Service**. Any decision to continue a Contractor employee in a CSO, DS, or CM capacity will be made solely by the USMS Office of Court Security on a case-by-case basis in accordance with the requirement to safeguard the Federal judicial process, the Judiciary, citizens, and property as per policies and directives governing Office of Court Security operations.
>
> (c) Any employee provided by the Contractor that the Contracting Officer asserts has failed to meet the performance requirements set forth in Section C Description/ Specifications/Statement of Work, may be removed from performing services under this contract. **The United States Marshals Service reserves the right to temporarily remove a CSO, DS, or CM under investigation for an alleged serious performance standard violation or criminal charge from performing under the contract. The individual's firearm and credential must be returned to the USMS until the alleged incident is resolved. A determination by the Contractor that an employee's performance can be corrected by discipline and/or other measures and continue to meet the terms of the contract shall be made in writing to the Contracting Officer. The Contracting Officer and Office of Court Security shall make the final determination of suitability.**[1]

(Emphasis added.)

13.     As subsection (c) provides, Walden can recommend that a CSO who has been removed from service should be returned to work because Walden believes that corrective action (or other measures) have rendered that employee suitable for service. But the next sentence reaffirms that this is only a recommendation, and it is the USMS that makes the final determination on suitability.  Under subsection (b), moreover, the USMS expressly states that it

---

[1] The "Contracting Officer" and "Office of Court Security" referenced throughout the USMS contract are, respectively, a USMS official and an office of the USMS.

will not be bound by any arbitration decision (or other dispute resolution process) regarding the suitability of a CSO for service.

14. Finally, the USMS contract also establishes strict requirements governing the disciplinary process, including both the investigation of possible misconduct and the imposition of disciplinary action:

> **H.10 PROCEDURES FOR ADDRESSING COURT SECURITY OFFICER (CSO) MISCONDUCT OR FAILURE TO PERFORM**
>
> The Contractor shall report an alleged misconduct or failure to perform to the COR immediately. Failure to report performance violations to the Government may result in liquidated damages. Alleged misconduct and/or performance violations will be processed as follows:
>
> (a) Upon receipt of notification of an alleged misconduct and/or performance violation, the Contracting Officer will request the Contractor to investigate the alleged action. The Contractor shall investigate the alleged action and in all cases, report the results of the initial investigation to the Contracting Officer within 14 calendar days (two weeks, without regard for intervening weekends or holidays) after the request was sent to the Contractor by the USMS. The results of the investigation shall include all investigative supporting documents, and the Contractor's recommendation for disciplinary action.
>
> (b) Based on a thorough review of the data provided by the Contractor's investigation and the information provided by USMS, if the Government does not agree with the proposed disciplinary action the Government may request the Contractor to reconsider its proposed remedy. Any required re-consideration or re-investigation shall be submitted to the Contracting Officer by close of business on the seventh (7) calendar days (one week, without regard for intervening weekends and holidays) after the request was sent to the Contractor by the USMS.

15. Under these provisions, the standard process for the investigation of potential disciplinary violations (known as "Performance Standards violations" or "PSVs")) is that the USMS directs Walden to conduct an investigation in accordance with Section H.10 of the USMS contract. Walden must submit its investigation report and recommended disciplinary action (if any) within 14 days. The USMS has the authority to accept or reject Walden's recommendation, or to send the matter back for further investigation, which must be completed within 7 days.

16.     The CBA between Walden and the Union reaffirms the controlling applicability of the USMS contract.  First, under Section 6.1.a, the "Performance Standards" set forth in the USMS contract are effectively incorporated into the CBA and are expressly made a basis for disciplinary action.  Second, under Section 6.1.b, the Union may not bring a grievance claiming lack of just cause for disciplinary action over "issues involving the USMS contractual rights." These provisions of the CBA are shown as follows:

> **SECTION 6.1 GROUNDS FOR DISCIPLINE AND DISMISSAL**
>
> After completion of the probationary period, as specified in Section 2.5, no Employee shall be dismissed or suspended without just cause.
>
> a. **The Company's contract with the U.S. Government sets out performance standards for the CSOs in Section C of the Contract between the Company and the USMS. All Employees are required to comply with these standards. Failure to do so may lead to disciplinary action.** These performance standards, the USMS Deadly Force Standards and the U.S. Title 18 Domestic Abuse and Violence policy will be issued to each Employee and must be signed, acknowledging receipt, by the Employee and may be updated by the Company each year. Employees agree to comply with any non-disciplinary directives issued by the Government. The Company agrees to conduct investigations in compliance with accepted procedures.
>
> b. The Company may discipline Employees when necessary and discharge those who fail to uphold U.S. Government or Company standards. It is recognized by parties to this Agreement that progressive discipline shall be applied in dealing with Employees. However, it is also recognized that offenses may occur for which progressive discipline is not applicable (e.g. fraud, gross misconduct, theft, etc.). Disciplinary measures vary depending on the seriousness of the matter and the past record of the Employee. Failure to comply with any investigation procedures will result in dismissal. **All discipline shall be subject to the grievance and arbitration procedures, except for those issues involving the USMS contractual rights.** The Employee may request, in writing, to the District Supervisor, that any disciplinary action not resulting in suspension may be considered for removal from the Employee's file after 6 months, provided that no violations of the same type have occurred and that no more than one violation of any type has occurred.
>
> (Emphasis added.)

17.     Consistent with the exclusion from the grievance procedure of issues involving USMS contractual rights in Section 6.1.b above, the grievance procedure itself in Article 5 limits


grievances to "claimed violation(s) of this Agreement," and expressly bars grievances over removals of CSOs from service by the USMS:

> **SECTION 5.1 INTENT**
>
> **For purposes of this Agreement, a grievance shall mean a claimed violation of this Agreement, except that this grievance procedure shall not be used for any action or order of removal of an Employee from working under the contract by the U.S. Government** or revocation of required CSO credentials by the USMS provision for the removal of Contractor employees in Section H-9 of the Contract or its successor between the U.S. Marshals Service, U.S. Attorney's Office, members of the Judiciary and Walden Security. Upon written request, the Company will provide the Association, in a timely manner, with all information concerning the removal that the Company may legally release, and will provide the Association with any relevant information concerning the proper Government point of contact and their contact data. **If the U.S. Government decides that an Employee shall be removed then that decision is final and cannot be grieved. In addition, the grievance procedures outlined herein shall not apply where the Company is acting under express directives of the U.S. Government.**

(Emphasis added.)

18.   The CBA allows the Union to advance unresolved grievances to arbitration before a neutral labor arbitrator. The CBA restricts the arbitrator's role to interpreting and applying the express terms of the agreement, providing that "[i]t is understood and agreed between the parties that the arbitrator shall have n power to add to, subtract from, or modify any of the terms of this Agreement." (Exhibit B, Section 5.4.d.)

**Facts Underlying the Grievance**

19.   By letter dated February 23, 2021, the USMS ordered Walden to conduct an investigation into possible Performance Standards violations by a CSO named Arturo Casas relating to an incident that occurred on February 17, 2021. The USMS letter further ordered that Casas would be suspended pending investigation pursuant to Section H.9 of the USMS contract.

20.   In accordance with Section H.10 of the USMS contract, Walden conducted the investigation directed by the USMS. The investigation concluded that Casas had violated

security procedures and failed to comply with safety regulations and practices. As required by the USMS contract (at Section H.10), on March 8, 2021, Walden submitted its report to the USMS along with its recommended disciplinary action. The recommendation was a seven (7) day suspension for Casas.

21. While Walden awaited a response to its recommendation from the USMS, by letter dated March 29, 2021, the USMS ordered Walden to conduct another investigation of additional potential Performance Standards violations by Casas arising out of a separate incident that was unrelated to the February 17 incident.

22. Based on its investigation of the second incident, Walden recommended to the USMS an additional ten (10) day suspension for Casas for those Performance Standards violations. Walden's recommendation was for the suspension to be "time served," due to the fact that Casas remained barred from working on the USMS contract pending the USMS approval of his return to work. In total, Walden had recommended a 17-day suspension for both incidents.

23. By letters dated May 17, 2021, the USMS responded to Walden's recommendations for both disciplinary incidents, approving Walden's recommended 17-day suspension (and urged Walden to issue Casas a final warning as well), thereby allowing Casas to return to work on the USMS contract. Walden returned Casas to work the next day, May 18, 2021.

24. From the date that the USMS directed the removal of Casas from performing work on the USMS contract, until the May 17 USMS letter authorizing his return to work, Casas had been barred from working on the USMS contract for a total of 59 work days, 17 of which were his disciplinary suspension.

25. During the period that Casas remained barred from working under the USMS contract, Walden notified the USMS on multiple occasions that Casas was still removed from service pending the USMS approval of Walden's recommended suspension which had already elapsed.

26. Subsequent to Casas' return to work, the Union submitted a grievance on Casas' behalf pursuant to the grievance procedure in the CBA. The grievance did *not* challenge the 17-day suspension. Instead, the grievance claimed that *Walden* was responsible for making Casas whole for lost compensation for the additional period of time, beyond his suspension, that he was barred from working on the USMS contract *by the USMS* until his return to work on May 18, 2021. The grievance was denied by Walden at steps 1 and 2, after which the Union advanced the grievance to arbitration.

27. An arbitration hearing was held on January 7, 2022, before Arbitrator Brock, via videoconference. The parties executed a Stipulation of Facts which was entered in evidence, as well as several documentary exhibits, and also presented live witness testimony. The parties also submitted post-hearing briefs.

28. The parties have stipulated that the period of time in which Casas was removed from the USMS contract, apart from his 17 day suspension, was 42 working days. The parties have also stipulated (subsequent to the issuance of the Award) that the value of the lost compensation Casas was seeking was $10,506.72 (notwithstanding an incorrect figure included in the Award).

29. Prior to the arbitration, in its responses to the Union's step 1 and step 2 grievances, the Company denied the grievance because, *inter alia*, the CBA does not contain any provision that obligates Walden to pay a CSO for time out of work due to a USMS-directed

removal from service, and because the CBA expressly excludes USMS-directed removals from the grievance procedure. Before Arbitrator Brock, the Company similarly argued that the grievance was not substantively arbitrable because the Union could not identify a provision of the CBA that was allegedly violated by the Company.

30.     The Union cited the provision requiring "just cause" for discipline as the basis for its claim.  But that provision plainly could not be a valid basis for an arbitrable claim because, undisputedly, it was not Walden that kept Casas out of work for the 42 days in question.  Walden did not suspend Casas for 59 days; he was suspended for 17 days, while the USMS kept Casas out of work for an additional 42 days over which Walden had no control.  Walden did not commit any act or omission in violation of the CBA that caused Casas to be out of work for those 42 day, and the Union did not – and could not – claim otherwise.

**The Award**

31.     In the Award, the Arbitrator did not find that Walden was responsible for Casas being out of work for 42 days beyond his 17 day suspension. In addition, the Arbitrator found that Article 6 of the CBA, as quoted above, as well as Sections C.14 and H.9 of the USMS contract, expressly barred grievances over all aspects of a removal of a CSO from service by the USMS.  Specifically, the Arbitrator stated:

> I find that the above CBA language is ***very clear and unambiguous***, and is augmented by the [USMS contract].  In addition, there is no CBA language that defines anu requirements, criteria or limitations related to the USMS' ability to remove an employee from CSO service and when they may be returned to work which amounts, if viewed independently from the rest of CBA [sic], to a unilateral right by the USMS.  The CBA language also establishes a contractual bar to grieving and arbitrating the removal of a CSO which includes all aspects related to a removal, such as why they are removed, how long they are removed, and when they are returned to work. (Exhibit A at 18; emphasis added.)

32. Having found that the CBA bars grievances and arbitration over "all aspects related to a removal" of a CSO by the USMS, the only rational conclusion the Arbitrator could have reached, if he had been interpreting the CBA, was to deny the grievance, because the grievance on its face related to a removal of a CSO by the USMS. Indeed, by seeking to make Walden responsible for an employee's lost compensation resulting from a USMS-directed removal, the Union was attempting to vitiate the "very clear and unambiguous" terms it had agreed to which excluded such claims from the grievance procedure.

33. Yet the Arbitrator proceeded to disregard this clear and unambiguous CBA language to concoct an artificial ambiguity. Namely, the Arbitrator found that the USMS' unilateral right to remove a CSO from service conflicted with the CBA's requirement that discipline can only be for "just cause." Based on this fabricated conflict, the Arbitrator held that Casas had been "suspended" for 42 additional days without just cause.

34. In making this determination, the Arbitrator turned the CBA on its head and disregarded its plain terms. The CBA language that he found to be "very clear and unambiguous" deliberately and expressly *excluded* USMS-directed removals from the requirement that discipline be for "just cause" – for the patently obvious reason that Walden would not, and did not, agree to be responsible for actions ordered by the USMS over which Walden had no control or authority.

35. By applying the "just cause" standard to a USMS-directed removal over which Walden undisputedly had no control, the Arbitrator effectively altered the CBA to give it a meaning that is the opposite of what the parties bargained for in clear and unambiguous terms.

36. The Award should be vacated because the Arbitrator exceeded his jurisdiction and the authority granted to him by the CBA.

37. The Award should be vacated because it does not draw its essence from the CBA in that it conflicts with the express terms of the CBA; it does not arguably construe or apply the CBA; it is based on general considerations of fairness and equity instead of the clear and unambiguous terms of the CBA; and in it the Arbitrator dispensed his own brand of industrial justice.

38. In addition, the Arbitrator exceeded his powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made. Further the Award is internally contradictory with the undisputed stipulated facts and with the factual findings of the Arbitrator and is not supported by the testimonial and documentary evidence presented at the hearing. The Award is without a rational basis in fact and/or in the terms of the CBA, and violates public policy.

39. WHEREFORE, Plaintiff respectfully requests that this Court issue a judgment vacating the Award issued by Arbitrator Brock, declaring the Award null and void, and permanently enjoining the Union from seeking enforcement of the Award. Plaintiff further requests that this Court award Plaintiff its costs and attorney's fees related to this action, and other and further relief as it deems just and proper.

Dated: This 1st day of July, 2022.

                                              Respectfully submitted,

                                              */s John A. Basinger*
                                              John A. Basinger
                                              Texas Bar No. 00796173
                                              SAUL EWING ARNSTEIN & LEHR LLP
                                              One Riverfront Plaza
                                              1037 Raymond Blvd., Suite 1520
                                              Newark, NJ 07102-5426
                                              Phone: (973) 286-6724
                                              Fax: (973) 286-6800
                                              john.basinger@saul.com

40223325.2

- and –

Daniel Altchek
SAUL EWING ARNSTEIN & LEHR LLP

500 E. Pratt St., Suite 900
Baltimore, MD 21202
Phone: (410) 332-8635
Fax: (410) 332-8862
dan.altchek@saul.com
(motions for admission *pro hac vice* and to appear as Attorney-in-Charge forthcoming)