United States District Court
Southern District of Texas

**ENTERED**

September 30, 2023

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| METROPOLITAN SECURITY SERVICES INC d/b/a WALDEN SECURITY, Plaintiff, | § § § § § § § | CIVIL ACTION NO 4:22-cv-02186 |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| PROFESSIONAL ASSOCIATION OF COURT SECURITY OFFICERS-SOUTHERN DISTRICT OF TEXAS, Defendant. | § § § § § § § | |

OPINION AND ORDER
ON SUMMARY JUDGMENT

Plaintiff Metropolitan Security Services, Inc d/b/a Walden Security contracts with the United States Marshals Service to provide court security officers in the Southern District of Texas. Defendant Professional Association of Court Security Officers is the union which represents those CSOs. Dkt 1 at ¶¶ 1–2, 7–8.

By this action, Plaintiff seeks to vacate an arbitration award under Section 301 of the Labor Management Relations Act, 29 USC § 185, where the arbitrator found no just cause for the suspension of a CSO for forty-two days upon further finding that there was no approved suspension for those days. See Dkts 1 & Dkt 1-1. The arbitrator ordered Plaintiff to pay the CSO $13,896.96 (minus any earnings during the forty-two day period) and to make the CSO's employment "'whole' in all respects,

including, but not limited to, seniority, benefits, compensation, etc." Dkt 1-1 at 20.

Pending are cross-motions for summary judgment. Plaintiff's motion is denied. Dkts 13 & 13-1. Defendant's motion is granted. Dkt 15.

1. Background

In February 2021, the Marshals Service ordered Plaintiff to conduct an investigation into CSO Arturo Casas for a performance violation indicating that Casas had inadvertently left his service weapon in a restroom earlier that month. Dkt 15 at 11. On March 8, 2021, following investigation, Plaintiff removed Casas from service and recommended a seven-day suspension to the Marshals Service. Dkt 13-1 at 10–11.

On March 29, 2021, the Marshals Service ordered Plaintiff to investigate a second allegation against Casas regarding failure to report law enforcement activity related to his son. Id at 12–13. Plaintiff completed this second investigation and recommended an additional ten-day suspension on April 20, 2021. Id at 13.

The Marshals Service didn't respond to either of Plaintiff's recommendations until May 17, 2021, when it approved the seventeen-day suspension for both violations and allowed Casas to return to work the next day. But all told, Casas didn't work for a total of fifty-nine days from when he was removed from service to when he returned to work. Dkt 1 at ¶¶ 23–24.

Defendant submitted a grievance on behalf of Casas to challenge the additional forty-two days that weren't part of the approved suspension, while also seeking $10,506.72 in back pay. The parties proceeded pursuant to the grievance procedure in the applicable collective bargaining agreement, eventually arbitrating the dispute in January 2022. Id at ¶¶ 26–28. Plaintiff there argued that the removal could not be grieved or arbitrated under the CBA,

and Defendant claimed that the CBA allowed them to challenge the forty-two days for lack of just cause.

The arbitrator issued an award after hearing, ultimately concluding that the forty-two days could be challenged for lack of just cause and that there was no just cause. He awarded forty-two days of back pay upon finding no such cause to exist. Dkt 1-1.

Plaintiff brought this action to attack that award, and so some further detail as to the arbitrator's reasoning is warranted.

The arbitrator highlighted certain key provisions that supported the position of each side. In favor of Plaintiff's construction, he acknowledged that (i) the CBA provides that "the Government reserves the right at all times to determine the suitability of any Contractor employee to serve as a CSO," (ii) the Marshals Service "reserves the right to temporarily remove a CSO" who is "under investigation for an alleged serious performance standard violation or criminal charge from performing under the contract," and (iii) the CBA establishes a contractual bar to grieving and arbitrating all aspects of a removal of a CSO. Id at 19 (emphasis omitted). But in favor of Defendant's construction, he recognized that the CBA also requires "just cause" for any suspension or discharge. Id at 20. The arbitrator thus noted that the contract language "in each case is clear and unambiguous," with both positions at least in some respects being "correct." Ibid.

Upon further analysis, he determined that the CBA *as a whole* was ambiguous, given that the "two positions are polar opposites and may not exist together." Ibid. The arbitrator then focused on the implications of, and the concerns raised by, each position. He noted that the consequence of Plaintiff's proposed interpretation would be that all aspects of removals for suspensions and discharges wouldn't be able to be grieved and arbitrated, and the just-cause provision would be rendered meaningless. This

would be contrary to normal labor relations practices, which permit a union to arbitrate whether just cause was present. Id at 21. He also noted that the consequence of Defendant's interpretation would be that all aspects of suspension and discharge would be subjected to the just-cause standard. This would provide a right not normally held by unions. Ibid.

To resolve the ambiguity, the arbitrator relied upon a well-respected treatise, which states, "When one inter-pretation of an ambiguous contract would lead to harsh, absurd, or nonsensical results, while an alternative interpretation, equally plausible, would lead to just and reasonable results, the latter interpretation will be used." Ibid, citing Frank Elkouri and Edna Asper Elkouri, *How Arbitration Works* 9–36 (Bloomberg BNA 8th ed 2016). Applying that principle, he concluded that Defendant's interpretation—subjecting all aspects of suspension and discharge to the just-cause standard—is "just, reasonable and fair." Id at 21.

The arbitrator then applied the just-cause standard, found the suspension for the additional forty-two days to be without just cause, and sustained Defendant's grievance. He also awarded back pay for the forty-two days on which suspension wasn't approved. Ibid. The parties have stipulated that $10,506.72 is the correct value of the lost compensation, although the arbitrator awarded a higher figure. Dkt 1 at ¶ 28.

Plaintiff seeks to vacate the arbitration award, moving for summary judgment upon argument that (i) the arbitrator exceeded his jurisdiction and authority under the CBA, and (ii) the award didn't draw its essence from the CBA. Dkt 13-1 at 20–25. Defendant instead seeks to uphold the arbitration award and to obtain limited additional relief, moving for cross-summary judgment upon argument that (i) the award draws its essence from the CBA and should thus be enforced, (ii) interest should

4

be awarded to Casas, and (iii) Defendant is entitled to attorney fees. Dkt 15 at 20–29.

### 2.   Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986).

All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008), citing *Ballard v Burton*, 444 F3d 391, 396 (5th Cir 2006). When, as here, parties file opposing motions for summary judgment on the same issue, the court reviews each motion independently, each time viewing the evidence and inferences in the light most favorable to the nonmoving party. *Amerisure Insurance Co v Navigators Insurance Co*, 611 F3d 299, 304 (5th Cir 2010). Each movant must establish that no genuine dispute of material fact exists, such that judgment as a matter of law is in order. Ibid; see also *Tidewater Inc v United States*, 565 F3d 299, 302 (5th Cir 2009).

### 3.   Analysis

#### a.   Whether vacatur is warranted

Plaintiff argues that vacatur is warranted under either Section 301 of the Labor Management Relations Act or the Federal Arbitration Act. Dkt 13 at 1. Given national policy favoring arbitration, review under the latter is "extraordinarily narrow" and "exceedingly deferential." *Cooper v WestEnd Capital Management, LLC*, 832 F3d 534, 543–44 (5th Cir 2016), quoting *Rain CII Carbon, LLC v ConocoPhillips Co*, 674 F3d 469, 471–72 (5th Cir 2012) (cleaned up). Review under the former is likewise "very limited." *Major League Baseball Players Association v Garvey*, 532 US 504, 509 (2001). Courts may reverse the

award in a labor arbitration only if the award does not "draw its essence from the contract." *Communications Workers of America, AFL-CIO v Southwestern Bell Telephone Co*, 953 F3d 822, 826 (5th Cir 2020), quoting *United Paperworkers International Union, AFL-CIO v Misco, Inc,* 484 US 29, 38 (1987). And under the Federal Arbitration Act, a district court may vacate an arbitration award "where the arbitrators exceeded their powers." 9 USC § 10(a)(4).

Analytically, whether the award draws its essence from the CBA dictates whether the arbitrator has overstepped his authority. See *Communications Workers of America*, 953 F3d at 826–27. It will thus be analyzed first.

*As to the whether the award draws its essence from the CBA*, Plaintiff argues that it doesn't because the arbitrator found "a nonexistent ambiguity in the CBA that was not remotely based on the actual language of the agreement itself" by determining that the forty-two days for which Casas was not paid were subject to the just-cause standard. In particular, Plaintiff takes issue with the fact that the arbitrator took account of non-textual considerations. It further contends that this "purported interpretation of the CBA completely disregards the plan language," as other portions of the CBA are clear and unambiguous that the Marshals Service has complete control over the removal of a CSO, and removal cannot be grieved or arbitrated. Dkt 13-1 at 25–26.

The test for whether an award draws its essence from the contract "is whether the award, however arrived at, is rationally inferable from the contract." *American Laser Vision v The Laser Vision Institute, LLC*, 487 F3d 255, 259 (5th Cir 2007), quoting *Kergosien v Ocean Energy, Inc,* 390 F3d 346, 353–54 (5th Cir 2004). The CBA contains provisions that require discharge or suspension to be only for "just cause." Dkt 1-2 at 16. The arbitrator's decision takes account of this requirement, and his interpretation certainly doesn't read it out of the contract. Relying on a

rule of interpretation to resolve a conflict perceived by the arbitrator is also part of normal contractual interpretation. Indeed, it is rationally inferable to conclude that the provisions regarding the removal of a CSO are limited by the requirement of "just cause."

Because the award draws its essence from the CBA, the award will not be vacated.

*As to the arbitrator's jurisdiction and authority*, Plaintiff asserts that the arbitrator exceeded the jurisdictional limits of the CBA when he found that the grievance was arbitrable in reliance on non-textual considerations. Dkt 13-1 at 26–27. To the contrary, the award demonstrates that the arbitrator strove only to interpret the agreement. He identified the relevant clauses in the CBA; determined their individual meanings; found those individual meanings to actually conflict; and used a rule of interpretation to choose which meaning would prevail. See Dkt 1-1. Simply by resolving a perceived ambiguity, the arbitrator certainly did not "ignore the plain language of a contract" and thereby overstep his jurisdiction and authority. *Delek Refining, Ltd v Local 202*, 891 F3d 566, 570 (5th Cir 2018).

In short, it's clear that the arbitrator stayed well within jurisdictional limits when interpreting the CBA. Beyond that, the Fifth Circuit dictates, "The correctness of the arbitrator's interpretation is irrelevant so long as it was an *interpretation*." *Sun Coast Resources, Inc v Conrad*, 956 F3d 335, 337 (5th Cir 2020) (emphasis original). Analysis here thus won't extend to whether his determination was flawed. For even if flawed, the award won't be second guessed in the absence of something extraordinary. And nothing raised by Plaintiff suggests in any way that that the arbitrator was "dispensing his own brand of industrial justice." *American Laser Vision*, 487 F3d at 260.

A party seeking to vacate an arbitral award "bears a heavy burden." *Oxford Health Plans LLC v Sutter*, 569 US 564, 569 (2013). Plaintiff hasn't met that burden.

b. Interest

Defendant contends that the "make-whole relief" must here include interest on the properly awarded amount of $10,506.72, from the date of the award until the amount is paid. Dkt 15 at 26, citing *Miller v Robertson*, 266 US 243, 257–58 (1924); *Smith & Co v Russek,* 212 F3d 338, 341 (5th Cir 1954). Plaintiff responds that no interest is warranted where the award itself was erroneous, and further that Defendant cites only cases involving commercial disputes—but none involving an action to vacate labor arbitration awards. Dkt 16 at 21.

Defendant presents its request as generally seeking "interest." It is correct that "compensation is a fundamental principle of damages," and when one "fails to perform his contract," he is "justly bound to make good all damages that accrue naturally from the breach; and the other party is entitled to be put in as good a position pecuniarily as he would have been by performance of the contract," and "interest is allowed on money due." *Miller*, 266 US at 257–58.

Federal district courts confirming district court arbitration awards may modify an award by awarding interest. *Schlobohm v Pepperidge Farm, Inc*, 806 F2d 578, 580 (5th Cir 1986) (noting that allowing district court to award interest would not "judicialize" arbitration process). But the proper and specific types of interest are differentiated between prejudgment and postjudgment interest.

The award of prejudgment interest on an arbitrator's award is governed by Texas law. Under Texas law, "prevailing parties receive prejudgment interest as a matter of course," and an "arbitration award bears interest in the same manner as a judgment of a court of last resort." *Executone Information Systems, Inc v Davis*, 26 F3d 1314, 1329–30 (5th Cir 1994). This award is grounded in the same equitable principle articulated in *Miller*, that "an injured party should be made whole." Ibid.

Post-judgment interest pertains to interest accrued on an unpaid judgment from the date of entry of judgment. Federal law governs the award of post-judgment interest. *Meaux Surface Protection, Inc v Fogleman*, 607 F3d 161, 173 (5th Cir 2010). It is typically awarded from the date of entry of the judgment "at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [ ] the date of the judgment." 28 USC § 1961(a). Interest is calculated daily and compounded annually. Id at § 1961(b). Postjudgment interest accrues on the prejudgment interest. *See Fuchs v Lifetime Doors, Inc*, 939 F2d 1275, 1280 (5th Cir 1991).

Defendant is a prevailing party. As such, prejudgment interest will be awarded up to the point of entry of this Order at the rate specified in Texas Finance Code § 302.002. *McVay v Halliburton Energy Services Inc*, 688 F Supp 2d 556, 564 (ND Tex 2010). Postjudgment interest will be awarded at the current rate specified under federal law, which at present is ___% per annum.

       c.   Attorney fees

Federal district courts confirming district court arbitration awards may also modify an award by awarding attorney fees. *Schlobohm*, 806 F2d at 580.

The Fifth Circuit holds that attorney fees should be awarded when a challenge is "without justification." *Delek Refining*, 891 F3d at 573. Such reference to *justification* refers to the type of challenge being made. On the one hand, when a party challenges an arbitrator's jurisdiction or authority, no fee will be awarded even if they come up short. But on the other, challenges to the "intrinsic merits" of a dispute "justify fees even if not frivolous." Ibid.

Defendant asserts entitlement to attorney fees because Plaintiff has refused to abide by an arbitration award "without justification," bringing arguments that "boil down to simple disagreement with the Arbitrator's interpretation." Dkt 15 at 27–28. Plaintiff opposes an award of

attorney fees, responding that its challenge is based on the arbitrator's "failure to recognize the limits on his jurisdiction and authority, and on his failure to interpret the CBA as opposed to concocting non-existent ambiguities and ignoring express provisions of the contract." Dkt 16 at 20.

*Delek Refining* itself dealt with a party trying to "transform [a merits] claim into an excess-of-powers claim." 891 F3d at 574. The Fifth Circuit there affirmed an award of attorney fees where the challenge regarded whether provision in the CBA permitted contract workers to replace employees. Ibid.

In like fashion here, Plaintiff's arguments center only on *why* the arbitrator incorrectly interpreted the CBA. True, it putatively framed the argument as one seeking vacatur because the arbitrator went beyond his jurisdiction. But the reality is that argument proceeded only against the way in which the arbitrator reconciled the conflicting parts of the CBA, while attacking it as a flawed interpretation. See Dkt 13-1. That type of challenge quite palpably goes to the merits of the award.

The challenge by Plaintiff was without justification. Attorney fees will be awarded.

4.   Conclusion

The motion for summary judgment by Plaintiff Metropolitan Security Services is DENIED. Dkts 13 & 13-1.

The motion for cross-summary judgment by Defendant Professional Association of Court Security Officers is GRANTED. Dkt 15.

Defendant is ordered to submit a proposed final judgment in conformance with this ruling by October 16, 2023.

SO ORDERED.

Signed on September 29, 2023 at Houston, Texas.

Hon. Charles Eskridge